2004 ME 72

**Jerald R. COURT**

v.

**Pamela A. KIESMAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 12, 2003.

Decided: June 3, 2004.

Ronald G. Caron, Saco, for plaintiff.

Donna A. Bailey, Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Pamela A. Kiesman appeals from the judgment entered in the District Court (Biddeford, *Janelle, J.*) in favor of Jerald R. Court on his complaint for breach of contract. On appeal, Kiesman asserts (1) that the District Court improperly construed the agreement as a contract dispute rather than a private modification of child support; (2) that the contract is void because it is against public policy; and (3) that the District Court erroneously determined that Court did not breach the contract. Although we find no error in the trial court's conclusion that a contract existed, we conclude that the contract contravenes public policy. Accordingly, we vacate the judgment and remand for further action on Court's unjust enrichment claim.

## I. BACKGROUND

[¶ 2] Pamela Kiesman and Jerald Court are the parents of a child who was born in 1984. The child lives with his mother, and his father has had an ongoing child support obligation for most of his life. According to the parties, by 1997, that obligation, created through a Department of Human Services administrative decision and incorporating an apparent arrearage, was $89 per week for the benefit of the child. Court complied with this order until November 1, 1997. At that time, the parties entered into an agreement whereby Court would give Kiesman a ten-year-old pickup truck as payment for his child support obligation for three years.

[¶ 3] Before entering into the agreement, Court contacted DHS regarding the proposal and learned that DHS would not recognize such an in-kind exchange. Cognizant of that fact, the parties entered into a separate written agreement for the sale of the truck. The agreement did not mention child support; it provided as follows: "Sold one 1987 Ford f–150 4×4 pickup VIN # 2FTEF14N7HCA89912, [f]or the amount of $90.00 per week for 156 weekly payments to Pamela Kiesman." The parties did not physically exchange payments; instead, they agreed to exchange receipts as proof of payment. At the time of the agreement, the parties exchanged receipts to cover an eight-month period.

[¶ 4] After taking possession of the truck, Kiesman had trouble registering the vehicle because the title listed Ocean Communities Federal Credit Union as a lienholder. Although the credit union no longer had a lien on the vehicle, Kiesman testified that Court refused to present written confirmation of the discharge unless Kiesman agreed to sign receipts for child support payments through 2000. According to Court, Kiesman never informed him that she was unable to register the vehicle and that all lien discussions related to Court's lien on the vehicle and Kiesman's attempt to sell the truck. Kiesman

testified that she could not use the truck because of her inability to register it, and the truck remained in her driveway during the course of their dispute.

[¶ 5] In January 2002, Kiesman sent a letter to DHS asking it to begin collections of past child support payments for the years 1997 through 2000. In the letter, Kiesman informed DHS that she asked it to stop child support collections in 1997 because she and Court had an agreement to exchange a truck in lieu of child support. According to Kiesman, Court failed to fulfill his end of the bargain because he would not provide written confirmation of the lien discharge.

[¶ 6] At Court's request, DHS held an administrative hearing in May 2002. In its decision, the hearing officer stated that the "contractual dispute over the sale of a pickup ... [was] only tangentially an issue of child support" and did not "fall within the limited subject matter jurisdiction of a Department of Human Services administrative hearing." The hearing officer found that Court owed $13,025.60 in past child support obligations. Court did not appeal the DHS decision.

[¶ 7] While the DHS child support dispute was pending, Court filed a complaint in District Court alleging breach of contract and unjust enrichment. In his complaint, Court alleged that he had relinquished ownership and possession of the vehicle to Kiesman. He also alleged that Kiesman breached the agreement by providing Court with child support receipts amounting to only $2880. Kiesman filed a counterclaim alleging that Court breached the contract by failing to relinquish ownership of the truck. In her counterclaim, Kiesman alleged that the parties entered into an agreement whereby Court was to give Kiesman the truck "in exchange for a suspension of child support for [three] years." Court admitted this allegation in his answer to Kiesman's counterclaim.

[¶ 8] The court found that the parties entered into a valid contract for the sale of Court's truck in exchange for payment of $90 per week for 156 weeks. The court also found that Court "fully performed his obligations under the contract" and that Kiesman breached the contract by failing to pay Court *"the contract amount or to take the steps necessary to credit him $14,040.00 against his child support obligation."* (Emphasis added.)

## II. DISCUSSION

[¶ 9] The primary purpose of child support ordered by a court or administrative agency is to protect the best interests and welfare of the benefiting child. *See Wood v. Wood,* 407 A.2d 282, 284, 287 (Me.1979). Parties may not enter into private agreements to modify the terms of a child support order because private modifications frustrate the administrative agency's ability to determine the amount of child support. *See Beck v. Beck,* 1999 ME 110, ¶ 7, 733 A.2d 981, 983; *Fisco v. Dep't of Human Servs.,* 659 A.2d 274, 275 (Me. 1995); *Ashley v. State,* 642 A.2d 176, 176 (Me.1994).

[¶ 10] Court argues that the contract did not constitute a private modification of child support because it did not, on its face, modify his child support obligation. The trial court found that the parties did enter into a contract for the sale of the truck. That finding, standing alone, was not error.[1] The court had be-

---

1. A valid contract exists if "the parties mutually assent 'to be bound by all its material terms; the assent ... [is] manifested in the contract, either expressly or impliedly; and the contract ... [is] sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.' " *Forrest Assocs. v. Passamaquoddy*

fore it a written agreement that embodied the essential elements of a valid contract. The contract for the sale of the truck, signed by both parties, included sufficient information, such as the model and year of the truck, VIN number, and payment schedule, to enable a court to determine the exact meaning of the contract and to fix the legal liability of each party.

[¶ 11] The analysis, however, does not end with the recognition of the contract, because we will not enforce a contract that contravenes public policy. *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 272 (Me.1986). "A contract is against public policy if it 'clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society.'" *Id.* (quoting *Lesieur v. Inhabitants of Rumford*, 113 Me. 317, 319–20, 93 A. 838, 839 (1915)). When confronted with a public policy consideration, we balance the parties' freedom to contract against the detriment to society if we were to enforce the contract. *Id.*

[¶ 12] We recognize that parties have considerable latitude in their freedom to contract. The fact that Court and Kiesman are the parents of a child and are bound by a valid child support order does not, in itself, preclude them from entering into a contract for the sale of a truck. However, we cannot ignore the fact that the parties entered into this separate contract in order to circumvent the judicial process necessary for a modification of a child support obligation. The sale of the truck was inextricably linked to Court's child support obligation. He admitted that the parties entered into a separate agreement for the sale of the truck only after learning that DHS would not recognize an in-kind exchange, and, through his answer to her counterclaim, admitted that the parties intended to exchange the truck "for a suspension of child support for [three] years." The trial court's finding tying Kiesman's breach to her failure "to credit [Court] $14,040.00 against his child support obligation" brings home the fact that the contract represented nothing more than a private modification of child support. Therefore, the parties' freedom to contract must be weighed against the impact of enforcing a contract entered into for the sole purpose of evading the modification process. *See Allstate Ins. Co.*, 513 A.2d at 272.

[¶ 13] The purpose of child support ordered by a court or administrative agency is to protect the best interest of the benefiting child, not to serve as a bargaining tool for parents. *See Wood*, 407 A.2d at 284, 287. Allowing parents to circumvent the modification process by entering into contracts that are only facially separate from the issue of child support frustrates the ability to enforce child support orders. There is little difference between the parties' private contract here and the contract the parties entered into in *Fisco v. Department of Human Services*, 659 A.2d at 274. There, the parents agreed that, in exchange for the father relinquishing all rights to visit the child, the mother would release him from his child support obligation. *Id.* The agreement, urged on the father by the mother, was reduced to writing.[2] *Id.* The father apparently complied

---

*Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044 (quoting *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me.1996)). "The intent of the parties in entering a contract, whether a contract exists, and whether a breach has occurred are all questions of fact that we review for clear error." *Id.*

2. Although the mother signed the agreement and had it notarized, the father did not sign it. *Fisco v. Dep't of Human Servs.*, 659 A.2d 274, 274 (Me.1995).

with his side of the agreement and did not seek further contact with the child. *See id.* at 276. Twelve years later, the mother sought to enforce the child support obligation. *Id.* at 274–75. We noted that the father "was at least vaguely aware" that the agreement "improperly modified the judicially imposed" child support order. *Id.* at 275–76. We concluded that "[t]he law is clear," *id.* at 276, and that a parent's "reliance on this kind of informal agreement is unreasonable and unjustifiable," *id.* at 275.

[¶ 14] In the matter before us, Court's reliance on his contract with Kiesman is equally unjustified. The law remains clear: parents may not barter away their obligation to make payments intended for the support of a child. Plainly put, a parent "cannot rely on a private agreement to ignore a court order to pay child support." *Beck,* 1999 ME 110, ¶ 7, 733 A.2d at 983. By finding that Kiesman breached the contract when she failed to pay Court or *credit* his child support obligation, the trial court, in fact, gave its judicial imprimatur to a private agreement circumventing the requirement that child support be paid. That agreement is void, and the court's determination that Kiesman breached her agreement to credit Court for the unpaid child support payments in return for the truck must be vacated.

[¶ 15] However, because the court found that Kiesman did receive the truck, has maintained possession of the truck, and that Court did not fail to provide the necessary documentation, and because those findings are amply supported by the record, Court may be entitled to relief through his unjust enrichment claim.[3] Therefore, we remand the case to the District Court for consideration of Court's unjust enrichment claim.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.

---

3. To establish a claim for unjust enrichment, a party must prove (1) that it conferred a benefit on the other party; (2) that the other party "had appreciation or knowledge of the benefit"; and (3) that the "acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *June Roberts Agency, Inc. v. Venture Props., Inc.,* 676 A.2d 46, 49 (Me.1996). "Recovery under the doctrine of unjust enrichment is measured by the value of the benefits that the plaintiff proves are actually received and retained by the defendant . . . ." *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 106 (Me.1994).